# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Black LG smart phone with serial number 35349507707741

Case No. 16 M 105

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ■ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. § 844(i); 18 U.S.C. § 922(g)(1); and 26 U.S.C. §§ 5861(d), (e) & (f)

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Anthony Randazzo, ATF
Printed Name and Title

Sworn to before me and signed in my presence:

Date: Oct. 3, 2016

_____
Judge's signature

City and State: Milwaukee, Wisconsin         Honorable David E. Jones          , U.S. Magistrate Judge
Printed Name and Title

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT UNDER RULE 41

I, United States Bureau of Alcohol, Tobacco, and Firearm (ATF) Task Force Officer Anthony Randazzo, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a cellphone, which is currently in law enforcement possession and is described in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Milwaukee Police Officer assigned to work with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosive (ATF), as a federally deputized Task Force Officer. I have been employed as a full time law enforcement officer for over 24 years. I have received training in the investigation of arson and explosives. I have participated in numerous investigations of fires and explosives. I have participated in numerous search warrants to include execution of search warrants for electronic media. My duties include investigating violations of federal firearms, arson and explosive laws. I have received training on securing digital media for forensic examination.

3. This affidavit is made in support of an application for a warrant to search a cellphone for evidence of violations of Title 18, United States Code, Sections 18 U.S.C. § 844(i) (malicious use of fire); 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); and 26 U.S.C. §§ 5861(d), (e) & (f), (possess, transfer or making a firearm not registered in the National Firearms Registration and Transfer Record). There is probable cause to seize the evidence, instrumentalities,

contraband, or fruits of these crimes described in Attachment B from the cellphone described in Attachment A.

4. Under 26 U.S.C. § 5845(a) and (f), the definition of "firearm" includes a "destructive device", which includes: "(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;… and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

5. The definition of "make" under 26 U.S.C. § 5845(i) includes "manufacturing (other than by one qualified to engage in such business in this chapter), putting together, altering, any combination of these, or otherwise producing a firearm."

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a Black LG smart phone with serial number 35349507707741, and the cellphone has a black case on it. The cellphone is currently located at

the ATF-Milwaukee office, Water St., Milwaukee, in secure evidence holding. It was inventoried in case number 778020-16-0067 as item 50.

8. The applied-for warrant would authorize the forensic examination of the cellphone for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

*Events of August 13 and 14, 2016*

9. On August 13 and 14, 2016, the city of Milwaukee experienced civil unrest in the areas of: (1) N. Sherman Blvd. and W. Burleigh St.; and (2) N. 35 St. and W. Burleigh St. The civil unrest was in response to a police officer involved shooting that occurred at the intersection of N. 44 St. and W. Auer Ave., Milwaukee, on August 13, 2016.

10. In the course of the civil unrest on August 13 and 14, 2016, suspects set fires that caused damage at the following seven businesses, which were, at the time, engaged in activities affecting interstate commerce: (1) BP Gas Station, 3114 N. Sherman Blvd., Milwaukee; (2) O'Reilly Auto Parts, 3405 W. Fond Du Lac Ave., Milwaukee; (3) Jet Beauty, 3501 W. Burleigh St., Milwaukee; (4) BMO Harris Bank, 3536 W. Fond Du Lac Ave., Milwaukee; (5) PJ's Market, 3079 N. 21st St., Milwaukee; (6) MJM Liquor, 2229 W. Fond Du Lac Ave.; Milwaukee; and (7) Big Jim's Liquor, 2161 W. Hopkins Ave., Milwaukee.

11. The investigation into these seven commercial fires revealed that the fires were intentionally set. Investigators also learned that Molotov cocktails were used to start some of the fires. A Molotov cocktail is described as a glass container with a wick that holds a flammable

liquid, usually gasoline. The wick is then lit and the bottle is thrown causing an explosion upon impact.

*Charles N. Edwards Molotov Cocktail Investigation*

12. On August 23, 2016, ATF was contacted regarding suspected Improvised Incendiary Devices (IID) located within a dumpster at 3284 N. Sherman Blvd., Milwaukee. ATF Special Agents traveled to the above location and discovered a brown cardboard box holding multiple glass bottles containing a liquid with cloth rags inserted into the openings. The responding agents smelled a strong odor of a petroleum distillate emanating from the dumpster, which is consistent with the presence of gasoline. From training and experience, the agents identified these devices as "Molotov cocktails". Some of the glass bottles holding the liquid and cloth wicks were labeled as Mike's Hard Lemonade, Everfresh Juice, Mystic, and Seagram's Wine Coolers.

13. On August 29, 2016, law enforcement conducted a search warrant at the residence of Van L. Mayes, which was located at 2746A N. 49th Street, Milwaukee. Law enforcement agents observed a full bottle of a Seagram's Wine Cooler and one empty bottle of Everfresh Juice. These bottles were consistent with the types of bottles used in the construction of the Molotov cocktails recovered by law enforcement on August 23, 2016, from the dumpster located at 3284 N. Sherman Blvd., Milwaukee. During the search warrant, Mayes told law enforcement agents that he transported two gasoline cans and Seagram's Wine Cooler bottles to a man named "Charles" who uses a wheelchair and resides around Sherman Blvd., Milwaukee. Mayes further stated that he left the two cans of gasoline at Charles' residence.

14. Affiant verified that Charles N. Edward currently uses a wheelchair and resides at 3284 N. Sherman Blvd. Apt.#2, Milwaukee.

15. On August 30, 2016, Milwaukee County Judge Timothy Witkowiak signed a search warrant for Charles N. Edwards' residence located at 3284 N. Sherman Boulevard Apartment #2, Milwaukee, to search for evidence of narcotics and guns.

16. During the search of Charles N. Edwards' residence on August 30, 2016, law enforcement agents located two empty gas cans inside of a bedroom; a gas can nozzle within the apartment's yard; and bottle caps in the yard that were consistent with the types of bottles used to construct the Molotov cocktails that were recovered on August 23, 2016.

17. An inquiry into the National Firearm Registration and Transfer Record revealed that Charles N. Edwards was not of record.

18. An inquiry into the criminal history of Charles N. Edwards shows in 1998 he was convicted of a felony burglary, and the conviction is unreversed.

*BP Gas Station Arson Investigation*

19. Information was developed through the course of the investigation that led to the arrest of a juvenile, A.T. On September 14, 2016, A.T. stated to the affiant that he was at the BP Gas Station, located at 3114 N. Sherman Blvd., Milwaukee, on the evening of August 13, 2016. A.T. explained that he threw a Molotov cocktail onto a car, which was parked in the BP Gas Station parking lot. A.T. stated that this action caused the car to start on fire. A.T. described the Molotov cocktail as a "bottle with fire in them". A.T. further stated that he was given the Molotov cocktail

by another juvenile, R.M. A.T. stated that on August 13, 2016, R.M. threw a Molotov cocktail into the rear door of the BP Gas Station which ignited the storage room. A.T. stated that R.M. got several Molotov cocktails from Charles Edwards, B/M, 09-28-1964, a man who is in a wheelchair A.T. identified Edwards through a phot. A.T. stated that R.M. told him that Edwards had numerous Molotov cocktails in a bag that was on his wheelchair.

20. On September 21, 2016, R.M. met with the affiant. R.M. stated that he was at the BP Gas Station on August 13, 2016 for a short time. R.M. stated that he saw A.T. at the BP Gas Station as well. R.M. stated that his cellphone number was 414-745-1232.

21. Affiant also spoke to R.M.'s mother, Trina Oden, who stated that her cellphone number was 414-745-1232 and that R.M.'s cellphone number was 414-982-0178. Oden further stated that she was at the BP Gas Station while it was being looted and burned. Oden stated she saw R.M. at the BP Gas Station, but they were not together the whole time. R.M. was arrested for arson.

22. At the time of his arrest, R.M. was in possession of a cellphone, which was retained as evidence and placed on inventory at the ATF-Milwaukee office located on N. Water St., Milwaukee, WI. It was inventoried in case number 778020-16-0067 as item 50. The cellphone is a black LG smart phone with serial number 35349507707741. The cellphone has a black case on it.

23. Affiant knows that subjects use cellular phones to record events through the use of video recording and photographs. Your affiant knows that subjects who engage in criminal

activities use their cell phones to text and speak to others who were engaged in criminal activity with them. Your affiant knows that cellular companies keep records of which towers cellular phones were using at specific times.

24. Your affiant used FoneFinder.Net to determine the service provider of the number 414-745-1232 and 414-982-0178. It was determined that both numbers are serviced by Sprint Spectrum. Your affiant also determined that neither number has been ported and remain in the control of Sprint Spectrum.

25. Based on the information by law enforcement, affiant believes that on R.M.'s cellphone there is evidence of the violations of 18 U.S.C. § 844(i) (malicious use of fire); 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); and 26 U.S.C. §§ 5861(d), (e) & (f), (possess, transfer or making a firearm not registered in the National Firearms Registration and Transfer Record).

26. The cellphone is currently in the lawful possession of the ATF. It came into the ATF's possession when it was seized incident to arrest. Therefore, while the ATF might already have all necessary authority to examine the cellphone, I seek this additional warrant out of an abundance of caution to be certain that an examination of the cellphone will comply with the Fourth Amendment and other applicable laws.

27. The cellphone is currently in storage at the ATF-Milwaukee office located at N. Water St., Milwaukee, WI. In my training and experience, I know that the cellphone has been stored in a manner in which its contents are, to the extent material to this investigation, in

substantially the same state as they were when the cellphone first came into the possession of the ATF.

## **TECHNICAL TERMS**

28. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations.

PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control

a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

29. Based on my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cellphone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the cellphone because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

34. I submit that this affidavit supports probable cause for a warrant authorizing the examination of the cellphone described in Attachment A to seek the items described in Attachment B.

## ATTACHMENT A

*Property to be searched*:

Black LG smart phone with serial number 35349507707741. The cellphone has a black case on it.

# ATTACHMENT B

*Particular Things to be Seized*:

    a.    All records on the device described in Attachment A that relate to violations of 18 U.S.C. § 844(i) (malicious use of fire); 18 U.S.C. § 922(g)(1) (felon in possession of a firearm); and 26 U.S.C. §§ 5861(d), (e) & (f), (possess, transfer or making a firearm not registered in the National Firearms Registration and Transfer Record).

    b.    Items such as, but not limited to, call logs, phonebooks, saved usernames and passwords, text messages, emails, videos, documents, and Internet browsing history. This includes deleted, edited and current forms of these items.

    c.    Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as call logs, phonebooks, saved usernames and passwords, text messages, emails, videos, documents, and Internet browsing history.

    d.    Device information.

    e.    GPS coordinates or device location.

    f.    Records of Internet Protocol addresses used.

    g.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    h.    Any external memory device such as, but not limited to, SIM cards.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of electronic storage and any photographic form.